**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BERKLEY NATIONAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JASON WATT PICTURES, LLC, RICO LEÓN a/k/a ANDREW LEÓN, and JONATHAN SCHAUER,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, Berkley National Insurance Company ("BNIC"), by way of Complaint for Declaratory Judgment against Defendants, Jason Watt Pictures, LLC ("Watt Pictures"), Rico León a/k/a Andrew León ("León") and Jonathan Schauer ("Schauer" or "Claimant") (together, "Defendants"), alleges on knowledge as to its own acts and otherwise upon information and belief as follows:

## NATURE OF THE ACTION

1. This is an action seeking a declaratory judgment and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Defendant Watt Pictures has been named as a defendant in an underlying lawsuit commenced by Defendant Schauer, captioned *Jonathan Schauer v. Jason Watt Pictures, LLC*, C.A. No. 26-CV-03476, filed in the United States District Court for the Eastern District of New York ("New York Action").

3. Defendant León has been named as a defendant in an underlying lawsuit commenced by Defendant Schauer, captioned *Jonathan Schauer v. Precision Custom Builders, LLC et al.*, Case No. CV2024CV31061, filed in District Court, Douglas County, State of Colorado (the "Colorado Action" and together with the New York Action, the "Underlying Actions").

4. In the Underlying Actions, Claimant alleges that he was approached by Watt Pictures to participate in an HGTV television production entitled "Rico To The Rescue" ("RTTR"), in which León "swoops in to help homeowners dealing with a project-gone-awry because of a bad contractor."[1]

5. According to Claimant, in connection with the television production, Watt Pictures and León brought in Precision Custom Builders ("PCB") to perform construction services at Claimant's home in Larkspur, Colorado (the "Project").

6. In the Underlying Actions, Claimant alleges that the faulty construction by Watt Pictures, León, and PCB has required Claimant to incur substantial costs in repairing and remediation the defective work.

7. Plaintiff BNIC issued Commercial Lines Policy No. CNA 7503824-14, effective May 1, 2022 to May 1, 2023 (the "2022-2023 BNIC Policy"), and renewal Policy Nos. CNA 7503824-15, effective May 1, 2023 to May 1, 2024 (the "2023-2024 BNIC Policy"), and CNA 7503824-16, effective May 1, 2024 to May 1, 2025 (the "2024-2025 BNIC Policy" and together, with the 2022-2023 BNIC Policy and the 2023-2024 BNIC Policy, the "BNIC Policies") to Discovery Communications LLC ("Discovery"), which include, *inter alia*, a Commercial General Liability Coverage Part (the "CGL Coverage Part") and a Media Production Insurance for Television and Networks Coverage Part (the "Media Production Coverage Part").

---

[1] https://www.hgtv.com/shows/rico-to-the-rescue/articles/who-is-rico-leon-host-of-hgtvs-rico-to-the-rescue

8. BNIC has been providing a defense to León subject a full reservation of rights.

9. Watt Pictures has tendered the Complaint in the New York Action for defense and indemnity coverage under the BNIC Policies.

10. Based on its ongoing investigation, BNIC has determined that the BNIC Policies do not provide coverage to Watt Pictures in connection with the claims alleged in the New York Action and, furthermore, that coverage for León in connection with the claims alleged in the Colorado Action may be limited and/or barred under the BNIC Policies.

11. BNIC therefore brings this action seeking a declaration of the parties' respective rights and obligations, if any, under the BNIC Policies in connection with the Underlying Actions.

**PARTIES**

12. Plaintiff BNIC is a corporation engaged in the insurance business organized and existing under the laws of State of Iowa and has its principal place of business located at 11201 Douglas Avenue, Urbandale, Iowa 50322-3707. BNIC is authorized to transact business and has transacted business in the State of New York.

13. Upon information and belief, Defendant Watt Pictures is a Limited Liability Company organized under the laws of the State of New York, with its principal place of business located at 110 Broadway, #507, Brooklyn, New York 11249.

14. Upon information and belief, Defendant León is an individual residing in Denver County, Colorado.

15. Upon information and belief, Defendant Schauer is an individual residing in Douglas County, Colorado. BNIC does not seek any relief from Defendant Schauer, who has been joined herein as a defendant solely in order to be bound by the judgment rendered in this action. Defendant Schauer is a citizen of Colorado.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201-02 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iii) the matter is between citizens of different states.

17. Venue is proper under 28 U.S.C. § 1391 because the BNIC Policies were issued to Discovery Communications LLC in this judicial district and thus a substantial part of the events giving rise to the claim occurred in this District.

## THE UNDERLYING ACTIONS

### A. The Colorado Action

18. On or about December 16, 2024, Claimant filed a First Amended Complaint in the Colorado Action against PCB, Siavash Zadeh ("Zadeh"), Watt Pictures, and León. A true and correct copy of the First Amended Complaint filed in the Colorado Action is attached hereto as **Exhibit A**.

19. In the Colorado Action, Claimant alleges that in 2020 he sought to remodel and expand his home in Douglas County, Colorado (the "Project") to add a new exercise room in the basement located under a new master suite on the main level.

20. The Project was regulated by the Douglas County Building Division ("DCBD"), which reviewed and approved construction documents and issued a building permit for the Project on or about January 8, 2021.

21. Construction began with the assistance of a contractor, but the contractor left the project in 2022.

22. Claimant alleges that he continued the Project and it was nearly ready for "interior framing inspection" and "electrical rough-in inspection" in the spring of 2023, which is when he was approached by Watt Pictures to participate in RTTR.

23. According to Claimant, Watt Pictures and León brought in PCB and Zadeh to replace the prior contractor.

24. Claimant states that he and Watt Pictures entered into a contract dated April 10, 2023 (the "Production Contract"), among other agreements entered into in connection with the Project. Pursuant to the Production Contract, it was agreed that Watt Pictures could enter Claimant's property to facilitate production of RTTR and Watt Pictures maintained right to exclusive use of the property for purposes of producing RTTR and performing renovations.

25. Further, the First Amended Complaint alleges that the Production Contract includes the following terms: (a) Watt Pictures could engage any individual to perform services in connection with the renovations without any consultation, notification, or approval by Claimant; (b) Claimant was required to enter into a written contract with PCB; (c) all costs for the Project were to be deposited in escrow "with a GC and Producer approved agent"; and (d) Claimant was required to provide Watt Pictures with "permission to renovate, remodel, redecorate, reorganize, or otherwise alter the Property […]"; (d) Watt Pictures had final decision authority on all aspects of the Project.

26. Claimant alleges that, consistent with the Production Contract, he entered into a contract with PCB dated May 20, 2023, for PCB to perform renovations at his home (the "Renovation Contract").

27. Claimant alleges that PCB began work on the Project for about two weeks in June and did not return to resume work until later in the fall of 2023.

28. According to Claimant, the Project was completed in approximately 10 weeks of work time.

29. The First Amended Complaint alleges that Watt Pictures, León, and PCB added new scope to the Project, including the following interior and exterior changes:

- Relocation of the Mudroom, Laundry Room, and doorway between the dwelling area and the Garage;
- Reconfiguration of the Master Bathroom;
- Reconfiguration of the stairway between the Main Level and the Basement;
- Installation of windows in the west wall of the Main Level old Master Bedroom;
- Relocation of interior electrical panels;
- Basement concrete slab cuts and new or reconfigured underground plumbing and electrical systems;
- Add new east elevation exterior balcony and footings off the new Main Level Master Bedroom;
- Demolish stucco and install new Tyvek WRB and siding on the east elevation of the Garage;
- Demolish existing south exterior deck and reconstruct expanded south exterior deck;
- Demolish existing siding, stucco, and select windows and doors on the south elevation and install new Tyvek WRB, select windows, and siding;
- Demolish existing stucco on the west elevation and install new Tyvek WRB and siding;
- New exterior windows in the west wall of the Main Level old Master Bedroom; Demolish existing north elevation windows, doors, stucco, and siding and install new Tyvek WRB, windows, doors, and siding;
- Demolish north elevation steps to entry way and install new north exterior deck.

30. Claimant alleges that the scope of the remodel of the existing Project was beyond what was submitted to and approved by DCBD for the Project and Watt Pictures, León, and PCB did not submit supplemental drawings to DCBD for scope changes and additions to the previously approved construction documents.

31. In the First Amended Complaint, Claimant states that there are "systemic construction defects" and "non-compliant construction with most of the work" including, but not limited to:

- The electrical utility service lines were unearthed and left exposed;
- Hardwired smoke alarms appear to be missing inside and immediately outside the southwest Basement sleeping room and Main Level old Master Bedroom;
- It is unknown if combination smoke and carbon monoxide detectors were installed in any location and there are no alarms of any kind installed immediately outside the southwest Basement sleeping room and Main Level old Master Bedroom;
- Flexible gas piping was routed over the top of the fireplace unit subjecting it to dangerous levels of heat;
- East exterior deck heavy timber framing has no connection to the concrete footings at the post bases, and the main beam is not connected to the top of the posts in any sufficient way;
- Concrete footings for the posts were not inspected for required depth or any required reinforcing. No footing size or reinforcing design was supplied by a registered Professional Architect or Engineer and reviewed by DCBD;
- Guardrail on the east balcony surface can be displaced several inches by hand when pushed perpendicular to the rail;
- The south exterior deck posts have no connection to concrete footings and lack adequate connections to the beams above;
- Deck post bases were set on top of footing with no structural connection;
- Several posts bases for the unpermitted south deck are set on grade without concrete footings and not adequately connected to the deck framing above;
- At the east end of the south deck, there is a drop in grade elevation of several feet and no guardrail is provided;
- Structural members carry significant tributary load without adequate connection to the wall of the residence;
- The fire rated assembly between the dwelling unit and the garage is incomplete;
- The framing for the Laundry Room and Mud Room is not built or configured according to the approved plan;
- Missing Class I or II vapor retarder on the interior side of the exterior walls and ceilings;
- Missing rigid insulation boards on the exterior side of the wall sheathing;

- R-38 insulation, where used, did not meet R-49 requirements;
- Utility room door required a 3-inch float that was not carried to the door installation;
- Where Tyvek WRB was installed at new or replaced windows, it was reverse lapped with the self-adhered membrane (SAM) flashing at the window heads and sills;
- Where Tyvek was installed at existing windows and doors that were not new or replaced, it was butted up to the edge of the window frame. At the sills, this created an opening for water intrusion onto the wood sheathing;
- At attic areas created by the trusses over the Master Suite, there are no attic access hatches installed and were not observed in the attic space located north of the Kitchen;
- Poor workmanship including: walls that are out of plumb and out of plane, failed seams in joints between gypsum wall boards, cracks in gypsum assemblies at corners, gouges and chips in several of the wall and ceiling surfaces, paint runs and drips in several areas, and improperly installed LVP flooring;
- Installation of tile at the tub surround in the old Master Bathroom without a waterproof membrane over the backer board;
- Numerous instances of incomplete work, including bathroom tile, basement finishes, toilets not set, HVAC registers not installed, trash not removed;
- Improper siding installation;
- Improper trim installation;
- Improper soffit installation;
- Improperly installed hose bibs or missing hose bibs;
- Missing roof vents;
- Missing HVAC condenser;
- Improperly installed windows and exterior doors;
- Improper grading;
- Missing siding and exposed WRB;
- Fireplace installed backwards;
- Missing door hardware;
- Missing gypboard.

32. According to Claimant, these defective conditions "have caused or will cause [Claimant] to incur the cost of substantial design and construction work to repair the damage caused by Defendants."

33. As against León, Claimant asserts causes of action in the Colorado Action for: (1) Negligence/Vicarious/Imputed/Joint and Several Liability (Count One); (2) Negligence Per Se (Count Two); and (3) Violation of the Colorado Consumer Protection Act (Count Eight).

34. As against Watt Pictures, Claimant asserted causes action in the Colorado Action for: (1) Negligence/Vicarious/Imputed/Joint and Several Liability (Count One); (2) Negligence Per Se (Count 2); (3) Breach of Renovation Contract (Count Three); (4) Breach of Fiduciary Duty (Count Four); (5) Breach of Production Contract (Count 5); (6) Breach of Express and Implied Warranty (Count Seven); (7) Violation of Colorado Consumer Protection Act (Count Eight); and (8) Violation of Colorado Construction Trust Fund Statute (Count 9).

35. On or about May 12, 2025, the Court dismissed Watt Pictures from the Colorado Action and enforced the forum-selection clause in the contract between Claimant and Watt Pictures, obligating Claimant to sue Watt Pictures in New York.

**B. <u>The New York Action</u>**

36. On or about June 10, 2026, Claimant filed the New York Action against Watt Pictures. A true and correct copy of the Complaint filed in the New York Action is attached hereto as **Exhibit B**.

37. The Complaint filed in the New York Action contains largely the same factual allegations as in the Colorado Action, described above.

38. In the New York Action, Claimant asserts causes of action against Watt Pictures for: (1) Negligence/Imputed Liability (Count One); (2) Breach of Renovation Contract (Count Two); (3) Breach of Fiduciary Duty (Count Three); (4) Breach of Production Contract (Count Four); and (5) Violation of Colorado Consumer Protection Act (Count Five).

## UNDERLYING CONTRACTS

39. On or about April 10, 2023, Claimant signed a Homeowner Appearance Release (the "Appearance Release") authorizing Watt Pictures to make use of Claimant's appearance for the RTTR program. A true and correct copy of the Appearance Release is attached hereto as **Exhibit C**.

40. On or about April 10, 2023, Claimant signed a Homeowner Location Release (the "Location Release") granting Watt Pictures permission to enter upon and use Claimant's property and the contents thereof for purposes of recording certain scenes in connection with the RTTR program. A true and correct copy of the Location Release is attached hereto as **Exhibit D**.

41. In the Location Release, Claimant (referred to as "Owner") acknowledged:

> 2. Renovations: Owner understands that the Production shall be centered around a home renovation project on the Property (the "**Renovation Project**"). Owner acknowledges and agrees that the Renovation Projects shall be subject to a written agreement directly between Owner and the general contractor (the "**GC**") (the "**GC Agreement**"). The GC Agreement shall be subject to Producer's prior review and approval before Owner executes such agreements or engages the GC. The GC Agreement shall include a provision that requires any and all costs for the Renovation Project to be disbursed in accordance the terms of an escrow agreement entered into between Owner and Escrow Agent. The scope of the work and timeline for the Renovation Project is to be discussed in good faith with and approved by Producer. In connection with the Renovation Project, Owner further grants Producer and/or Producer's designees permission to renovate, remodel, redecorate, reorganize, or otherwise alter the Property, which may include, but is not limited to, full scale renovations, demolition, construction, painting, wall papering, changing or removing furniture, fixtures and decorative items, knocking down walls, landscaping, and other internal and/or external renovation construction projects (collectively, the "**Renovations**"). Further, Owner understands and agrees that Rico Leon ("**Rico**") shall be the main talent in the Production and shall have the right to consult on the Renovation Project and the GC Agreement,

> but may not be the GC on the Renovation Project. Owner acknowledges and understands that the Renovations are the centerpiece of a television series that must be produced within a certain timeline and budget, therefore access to the Property at dates and times required by Producer are of the essence of this Agreement. Further, due to the nature of the Production, some aspects of the Renovations may not be disclosed or revealed to Owner until the completion of the Production and Owner expressly consents to the inclusion of such aspects of the Renovations.

42. On or about May 20, 2023, Claimant entered into an agreement with PCB to perform work on the Project (the "Construction Contract"). A true and correct copy of the Construction Contract is attached hereto as **Exhibit E**.

43. Watt Pictures is listed on the Construction Contract as "Producer".

44. On or about May 26, 2023, PCB and Watt Pictures entered into a Contractor Release Agreement ("Contractor Release") to perform professional services in accordance with a "Construction Agreement" between PCB and homeowners to be determined by future attachments to the Contractor Release. A true and correct copy of the Contractor Release is attached hereto as **Exhibit F**.

## THE BNIC POLICIES

45. BNIC issued to Discovery a Commercial Lines policy of insurance, Policy No. CNA 7503824-14, effective May 1, 2022 to May 1, 2023 (the "2022-2023 BNIC Policy"). A true and correct copy of the 2022-2023 BNIC Policy is attached hereto as **Exhibit G**.

46. The 2022-2023 BNIC Policy was renewed for consecutive policy periods under Policy Nos. CNA 7503824-15, effective May 1, 2023 to May 1, 2024 (the "2023-2024 BNIC Policy"), and CNA 7503824-16, effective May 1, 2024 to May 1, 2025 (the "2024-2025 BNIC Policy" and together, with the 2022-2023 BNIC Policy and the 2023-2024 BNIC Policy, the

"BNIC Policies"). True and correct copies of the 2023-2024 and 2024-2025 BNIC Policies are attached hereto as **Exhibit H** and **I**, respectively.

47. The pertinent policy terms and conditions in the two policy renewals are identical.

48. The CGL Coverage Part of the BNIC Policies is subject to limits of $1 million per occurrence, a $2 million general aggregate, and a $1 million products/completed operations aggregate. By virtue of an Aggregate Limits Per Production Endorsement, the General Aggregate applies to each film or videotape production produced by Discovery.

49. As is relevant here, the Media Production Coverage Part of the BNIC Policies is subject to a $5 million limit under Section II, Coverage C – Property of Others, subject to a $2,500 deductible.

50. The Commercial General Liability Coverage Part of the BNIC Policies, as modified by a New York Changes Endorsement, provide, in relevant part:

> **SECTION I - COVERAGES**
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> > 1. The amount we will pay for damages is limited as described in Section **III –** Limits Of Insurance; and
> >
> > 2. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:

> 1. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> 2. The "bodily injury" or "property damage" occurs during the policy period […]

****

51. The Insuring Agreement for Declared Productions[2] is modified by the following endorsement:

**NEW YORK - LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Premises:** |
| **Project Or Operation**:<br><br>Coverage Limited to Productions Declared to Company for Coverage. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations |

**A.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period […]

****

[2] The production giving rise to the Underlying Actions was declared to BNIC during the 2022-2023 policy period.

52. The CGL Coverage Part of the BNIC Policies is subject to the following Exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * * *

**j. Damage to Property**

“Property damage” to:

* * * *

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the “property damage” arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because “your work” was incorrectly performed on it.

* * * *

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

53. The BNIC Policies contain the following definitions:

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**(a)** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**(b)** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

* * * *

**16.** "Products-completed operations hazard":

**(a)** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed

* * * *

**17.** "Property damage" means:

**(a)** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**(b)** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

* * * *

**18.**"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

* * * *

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

54. The definition of "occurrence" in the BNIC Policies has been modified by endorsement to provide as follows:

**CHANGES TO DEFINITION OF "OCCURRENCE"**

SECTION V – DEFINITIONS is hereby modified as follows:

13. "Occurrence" shall be deleted and replaced with the following:

13. "Occurrence" means an accident; including continuous or repeated exposure to substantially the same general harmful conditions.

**a)** Alleged actions by an insured shall be deemed to be an accident unless:

**i.** the insured acted with an intent to actually cause "Bodily Injury" and/or "Property Damage;" or

**ii.** the insured acted in such a manner that "Bodily Injury" or "Property Damage" was substantially certain to occur.

**b)** The intent to cause injury to damage referred in this Definition may be shown by conduct that is inherently injurious or harmful.

**c)** Any issue of fact regarding the insured's intent shall require a defense of the insured

**d)** In states where extrinsic evidence is not considered regarding the duty to defend, we will provide a defense if extrinsic evidence creates a factual dispute regarding an insured's intent.

55. The Media Production Coverage Part in the BNIC Policies provides, in pertinent part:

**(N) "Occurrence"** means an accident or unintended event that occurs during the policy period and results in loss or damage.

* * * *

**Section II Property Coverage**

* * * *

**Coverage C – Property of Others**

We agree to pay you or on your behalf those sums that you become legally obligated to pay, including "loss of use", because of direct physical loss, injury to, damage or destruction of property of others

in your care, custody or control that is used or intended to be used in connection with an "insured production".

Under Section II Property Coverage, we will have the right and duty to defend you against any "suit" seeking damages to which this insurance applies. However, we will have no duty to defend you against any "suit" seeking damages for direct physical loss or damage to which this insurance does not apply. We may, at our discretion, investigate and settle any claim or "suit" that may result. Our right and duty to defend ends when we have used up the Limit of Insurance in the payment of judgments and settlements.

**Limits of Insurance and Deductible**

The most we will pay for loss or damage in any one "occurrence" shall not exceed the Limit of Insurance shown in the Declarations. This limit applies to any one "occurrence," regardless of the types or numbers of articles that are lost or damaged in that "occurrence."

Our liability for loss shall only be to pay the amount in excess of the deductible as stated in the Declarations.

56. The Media Production Coverage Part is subject to the following general exclusions:

**General Policy Exclusions Applicable to all Coverage Sections**

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

* * * *

(F) Any actual dishonest, actual fraudulent, actual criminal or malicious act committed by you, or your employees; or

(G) Any loss arising from an injunctive relief action or any legal liability arising out of negligence, breach of contract or infringement of intellectual property rights, or breach of confidence; or

(H) Any intentional act, damage to or destruction of property caused intentionally by you or at your direction…

57. The General Policy Conditions of the Media Production Coverage Part state:

**(R)** **"Term of Coverage"** for an "insured production" means the period beginning on the date an "insured production" is declared to us and continuing until the earliest of the following dates:

i. The first date of delivery required under contract with any Network, Advertising Agency or Distributor; or
ii. Eighteen (18) months after completion of photography on a production; or
iii. The date on which an answer print, duplicate tape or other form of protection has been obtained and physically removed from the premises where the original negative or tape is located; or
iv. The date on which cancellation or termination of coverage under this policy for the "insured production" becomes effective; or
v. The date your interest in the property ceases

all of which notwithstanding the expiration date of the policy.

## <u>CLAIM HISTORY</u>

58. In January 2025, BNIC agreed to provide a defense to León in connection with the Colorado Action, subject to a complete reservation of rights under the BNIC Policies.

59. In a supplemental coverage position letter dated June 17, 2026, BNIC advised León that, based on its continued investigation including discovery in the Colorado Action, BNIC disclaimed any coverage in connection with Count Eight of the First Amended Complaint for alleged Violation of the Colorado Consumer Protection Act pursuant to the Expected or Intended Injury Exclusion (Exclusion a.) in the CGL Coverage Part and because the intentional conduct alleged does not constitute an "occurrence" as defined in the BNIC Policies. BNIC also disclaimed any coverage for punitive or exemplary damages. A true and correct copy of BNIC's June 17, 2026 supplemental coverage position letter is attached hereto as **Exhibit J**.

60. BNIC's June 17, 2026 supplemental coverage position letter continued to reserve all of BNIC's other rights and defenses in connection with León's request for coverage, including as set forth therein.

61. By letter to Watt Pictures dated December 27, 2024, BNIC agreed to provide a defense to Watt Pictures in connection with the Colorado Action, subject to a complete reservation of rights. A true and correct copy of BNIC's December 27, 2024 coverage position letter is attached hereto as **Exhibit K.**

62. In a supplemental coverage position letter to Watt Pictures dated March 26, 2025, BNIC advised Watt Pictures that, based on its continued investigation including discovery in the Colorado Action, BNIC disclaimed any coverage the claim alleging Violation of the Colorado Consumer Protection Act (Count Eight) pursuant to the Expected or Intended Injury Exclusion (Exclusion a.) in the CGL Coverage Part and because the intentional conduct alleged does not constitute an "occurrence" as defined in the BNIC Policies. BNIC also denied coverage for the claim alleging Violation of Colorado Construction Fund Statute (Count Nine) since the alleged misuse or theft of Claimant's deposits does not constitute "property damage" or fall within the meaning of Section C – Property of Others in the Media Production Coverage Part. BNIC also disclaimed any coverage for punitive or exemplary damages. A true and correct copy of BNIC's March 26, 2025 supplemental coverage position letter is attached hereto as **Exhibit L**.

63. BNIC's March 26, 2025 supplemental coverage position letter continued to reserve all of BNIC's other rights and defenses in connection with Watt Pictures' request for coverage, including as set forth therein.

64. Following the dismissal of the claims against Watt Pictures in the Colorado Action in May 2025 and the filing of the New York Action in June 2026, Watt Pictures tendered the Complaint in the New York Action for defense and indemnity coverage under the BNIC Policies.

65. By email correspondence to Watt Pictures dated July 13, 2026, BNIC advised Watt Pictures that in light of its ongoing coverage investigation, Watt Pictures should retain personal counsel to protect its interests until Berkley's review was completed.

## COVERAGE IS LIMITED OR BARRED UNDER THE BNIC POLICIES

66. Based on its ongoing coverage investigation, BNIC has determined that there is no coverage available to Watt Pictures under the BNIC Policies in connection with the New York Action pursuant to the BNIC Policies' terms and provisions, including as follows:

**CGL Coverage Part**

- There is no coverage under the CGL Coverage Part for the claims against Watt Pictures because Claimant's allegations of "systemic construction defects and non-compliant construction with most of the work" on the Project requiring repair and remediation of the work do not constitute potentially-covered "property damage" caused by "occurrence";
- There is no coverage for "property damage" that did not occur during the subject policy periods for the BNIC Policies;
- Coverage is or may be barred pursuant to Exclusion j.(5) in the CGL Coverage Part, which bars coverage for "property damage" to "[t]hat particular part of real property on which [Watt Pictures] or any contractors or subcontractors working directly or indirectly on [Watt Pictures'] behalf are performing operations, if the 'property damage' arises out of those operations[.]"

- Coverage is or may be barred pursuant to Exclusion j.(6) in the CGL Coverage Part, which bars coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."
- Coverage is or may be limited or barred pursuant to Exclusion k. in the CGL Coverage Part, which bars coverage for "property damage" to "'your product arising out of it or any part of it," where "your product" is defined to include "good or products, other than real property, manufactured, sold, handled, distributed or disposed of by [Watt Pictures]";
- Coverage is barred pursuant to Exclusion l. of the CGL Coverage Part, which bars coverage for "property damage" to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'" and where "your work" is defined, in relevant part, as "[w]ork or operations performed by [Watt Pictures] or on [Watt Pictures'] behalf" and the Complaint in the New York Action alleges that Watt Pictures' work was improperly performed at the Project and required repair and/or remediation;
- Coverage is or may be barred pursuant to Exclusion m. of the CGL Coverage Part, which bars coverage for "property damage" to "'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms";

- There is no coverage for Count Two (Breach of Contract), Count Three (Breach of Fiduciary Duty) and Count Four (Breach of Production) in the Complaint in the New York Action pursuant to Exclusion b. of the CGL Coverage Part, which bars coverage for "property damage" for which "the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement";
- There is no coverage for Count Five (Violation of Colorado Consumer Protection Act) in the Complaint in the New York Action pursuant to Exclusion a. of the CGL Coverage Part, which bars coverage for "property damage" that is "expected or intended from the standpoint of the insured" and applies to the intentional conduct that forms the basis of Count Five in the Complaint;
- There is no coverage for any punitive or exemplary damages awarded against Watt Pictures as such sums do not constitute "damages" under the BNIC Policies and/or operative law.

**Media Production Coverage Part**

- There is no coverage available under Section II, Coverage C of the Media Production Coverage Part to the extent that the Complaint in the New York Action does not seek "those sums that you become legally obligated to pay, including 'loss of use', because of direct physical loss, injury to, damage or destruction of property of others in your care, custody or control that is used or intended to be used in connection with an 'insured production'";
- Coverage is and/or may be limited and/or barred under the Media Production Coverage Part to the extent that the claims against Watt Pictures allege "systemic construction defects and non-compliant construction with most of the

work" on the Project requiring repair and remediation of the work and thus do not constitute a potentially-covered "occurrence";

- There is no coverage available under the Media Production Coverage Part pursuant to Exclusion (G), which provides that BNIC "will not pay for loss or damage caused directly or indirectly by…[a]ny loss arising from an injunctive relief action or any legal liability arising out of negligence, breach of contract or infringement of intellectual property rights, or breach of confidence" since Claimant's claims clearly arise out of alleged negligence and/or breach of contract by Watt Pictures;
- Coverage is and/or may be limited or barred pursuant to Exclusion (F) in the Media Production Coverage Part, which provides that BNIC "will not pay for loss or damage caused directly or indirectly by…[a]ny actual dishonest, actual fraudulent, actual criminal, or malicious act committed by you, or your employees";
- Coverage is and/or may be limited or barred pursuant to Exclusion (H) in the Media Production Coverage Part, which provides that BNIC "will not pay for loss or damage caused directly or indirectly by…[a]ny intentional act, damage to or destruction of property caused intentionally by you or at your discretion";
- Coverage under the Media Production Coverage Part is limited and/or barred to the extent that the subject loss or damage did not occur during the applicable "Term of Coverage."

67. Based on its ongoing coverage investigation, BNIC has determined coverage for León under the BNIC Policies in connection with the Colorado Action is and/or may be limited or barred pursuant to the BNIC Policies' terms and provisions, including as follows:

**CGL Coverage Part**

- There is no coverage under the CGL Coverage Part for the claims against León to the extent that Claimant's allegations of "systemic construction defects and non-compliant construction with most of the work" on the Project requiring repair and remediation of the work do not constitute potentially-covered "property damage" caused by "occurrence";
- There is no coverage for "property damage" that did not occur during the subject policy periods for the BNIC Policies;
- Coverage is or may be barred pursuant to Exclusion j.(5) in the CGL Coverage Part, which bars coverage for "property damage" to "[t]hat particular part of real property on which [Watt Pictures] or any contractors or subcontractors working directly or indirectly on [Watt Pictures'] behalf are performing operations, if the 'property damage' arises out of those operations[.]"
- Coverage is or may be barred pursuant to Exclusion j.(6) in the CGL Coverage Part, which bars coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."
- Coverage is or may be limited or barred pursuant to Exclusion k. in the CGL Coverage Part, which bars coverage for "property damage" to "'your product arising out of it or any part of it," where "your product" is defined to include

"good or products, other than real property, manufactured, sold, handled, distributed or disposed of by [Watt Pictures]";

- Coverage is or may be barred pursuant to Exclusion l. of the CGL Coverage Part, which bars coverage for "property damage" to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'" and where "your work" is defined, in relevant part, as "[w]ork or operations performed by [Watt Pictures] or on [Watt Pictures'] behalf" and the First Amended Complaint in the Colorado Action alleges that León's work was improperly performed at the Project and required repair and/or remediation;
- Coverage is or may be barred pursuant to Exclusion m. of the CGL Coverage Part, which bars coverage for "property damage" to "'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms";
- There is no coverage for Count Eight (Violation of Colorado Consumer Protection Act) in the First Amended Complaint in the Colorado Action pursuant to Exclusion a. of the CGL Coverage Part, which bars coverage for "property damage" that is "expected or intended from the standpoint of the insured" and applies to the intentional conduct that forms the basis of Count Eight in the First Amended Complaint;

- There is no coverage for any punitive or exemplary damages awarded against León as such sums do not constitute "damages" under the BNIC Policies and/or operative law.

**Media Production Coverage Part**

- There is no coverage available under Section II, Coverage C of the Media Production Coverage Part to the extent that the First Amended Complaint in the Colorado Action does not seek "those sums that you become legally obligated to pay, including 'loss of use', because of direct physical loss, injury to, damage or destruction of property of others in your care, custody or control that is used or intended to be used in connection with an 'insured production'";
- Coverage is and/or may be limited and/or barred under the Media Production Coverage Part to the extent that the claims against León allege "systemic construction defects and non-compliant construction with most of the work" on the Project requiring repair and remediation of the work and thus do not constitute a potentially-covered "occurrence";
- There is no coverage available under the Media Production Coverage Part pursuant to Exclusion (G), which provides that BNIC "will not pay for loss or damage caused directly or indirectly by…[a]ny loss arising from an injunctive relief action or any legal liability arising out of negligence, breach of contract or infringement of intellectual property rights, or breach of confidence" since Claimant's claims clearly arise out of alleged negligence and/or breach of contract by León;

- Coverage is and/or may be limited or barred pursuant to Exclusion (F) in the Media Production Coverage Part, which provides that BNIC "will not pay for loss or damage caused directly or indirectly by…[a]ny actual dishonest, actual fraudulent, actual criminal, or malicious act committed by you, or your employees";
- Coverage is and/or may be limited or barred pursuant to Exclusion (H) in the Media Production Coverage Part, which provides that BNIC "will not pay for loss or damage caused directly or indirectly by…[a]ny intentional act, damage to or destruction of property caused intentionally by you or at your discretion";
- Coverage under the Media Production Coverage Part is limited and/or barred to the extent that the subject loss or damage did not occur during the applicable "Term of Coverage."

68. BNIC therefore brings this action seeking a declaration of the parties' respective rights and obligations, if any, under the BNIC Policies in connection with the Underlying Actions.

**COUNT ONE**
**(Declaratory Judgment – No Duty to Defend Watt Pictures Under the CGL Coverage Part)**

69. BNIC repeats and re-alleges the allegations of paragraphs 1 through 68 as if fully set forth herein.

70. BNIC seeks a declaration that, pursuant to the terms, provisions, definitions, conditions, and exclusions of the CGL Coverage Part in the BNIC Policies, it does not have any duty to defend Watt Pictures in the New York Action or any obligation to pay any defense costs incurred by Watt Pictures in connection therewith.

71. An actual, justiciable and ripe controversy exists between BNIC and Watt Pictures concerning BNIC's duty to defend Watt Pictures, if any, in New York Action under the CGL Coverage Part of the BNIC Policies.

72. BNIC is entitled to a declaratory judgment that it has no duty to defend Watt Pictures under the CGL Coverage Part in the New York Action.

**COUNT TWO**
**(Declaratory Judgment – No Duty to Indemnify Watt Pictures Under the CGL Coverage Part)**

73. BNIC repeats and re-alleges the allegations of paragraphs 1 through 72 as if fully set forth herein.

74. BNIC seeks a declaration that, pursuant to the terms, provisions, definitions, conditions, and exclusions of the CGL Coverage Part in the BNIC Policies, it does not have any duty to indemnify Watt Pictures in the New York Action or any obligation to pay any settlement costs incurred by Watt Pictures in connection therewith.

75. An actual, justiciable and ripe controversy exists between BNIC and Watt Pictures concerning BNIC's duty to indemnify Watt Pictures, if any, in New York Action under the CGL Coverage Part of the BNIC Policies.

76. BNIC is entitled to a declaratory judgment that it has no duty to indemnify Watt Pictures under the CGL Coverage Part in the New York Action.

**COUNT THREE**
**(Declaratory Judgment – No Duty to Defend Watt Pictures Under the Media Production Coverage Part)**

77. BNIC repeats and re-alleges the allegations of paragraphs 1 through 76 as if fully set forth herein.

78. BNIC seeks a declaration that, pursuant to the terms, provisions, definitions, conditions, and exclusions of the Media Production Coverage Part in the BNIC Policies, it does not have any duty to defend Watt Pictures in the New York Action or any obligation to pay any defense costs incurred by Watt Pictures in connection therewith.

79. An actual, justiciable and ripe controversy exists between BNIC and Watt Pictures concerning BNIC's duty to defend Watt Pictures, if any, in New York Action under the Media Production Coverage Part of the BNIC Policies.

80. BNIC is entitled to a declaratory judgment that it has no duty to defend Watt Pictures under the Media Production Coverage Part in the New York Action.

**COUNT FOUR**
**(Declaratory Judgment – No Duty to Indemnify Watt Pictures Under the Media Production Coverage Part)**

81. BNIC repeats and re-alleges the allegations of paragraphs 1 through 80 as if fully set forth herein.

82. BNIC seeks a declaration that, pursuant to the terms, provisions, definitions, conditions, and exclusions of the Media Production Coverage Part in the BNIC Policies, it does not have any duty to indemnify Watt Pictures in the New York Action or any obligation to pay any settlement costs incurred by Watt Pictures in connection therewith.

83. An actual, justiciable and ripe controversy exists between BNIC and Watt Pictures concerning BNIC's duty to indemnify Watt Pictures, if any, in New York Action under the Media Production Coverage Part of the BNIC Policies.

84. BNIC is entitled to a declaratory judgment that it has no duty to indemnify Watt Pictures under the Media Production Coverage Part in the New York Action.

**COUNT FIVE**
**(Declaratory Judgment – Whether and to What Extent BNIC May Have Duty to Defend León Under the CGL Coverage Part)**

85. BNIC repeats and re-alleges the allegations of paragraphs 1 through 84 as if fully set forth herein.

86. BNIC seeks a declaration regarding whether, and to what extent, it may have a duty to defend León in the Colorado Action pursuant to the terms, provisions, definitions, conditions, and exclusions of the CGL Coverage Part in the BNIC Policies.

87. An actual, justiciable and ripe controversy exists between BNIC and León concerning BNIC's duty to defend León, if any, in Colorado Action under the CGL Coverage Part of the BNIC Policies.

88. BNIC is entitled to a declaratory judgment regarding whether, and to what extent, it has a duty to defend León under the CGL Coverage Part in the Colorado Action.

**COUNT SIX**
**(Declaratory Judgment – Whether and to What Extent BNIC May Have Duty to Indemnify León Under the CGL Coverage Part)**

89. BNIC repeats and re-alleges the allegations of paragraphs 1 through 88 as if fully set forth herein.

90. BNIC seeks a declaration regarding whether, and to what extent, it may have a duty to indemnify León in the Colorado Action pursuant to the terms, provisions, definitions, conditions, and exclusions of the CGL Coverage Part in the BNIC Policies.

91. An actual, justiciable and ripe controversy exists between BNIC and León concerning BNIC's duty to indemnify León, if any, in Colorado Action under the CGL Coverage Part of the BNIC Policies.

92. BNIC is entitled to a declaratory judgment regarding whether, and to what extent, it has a duty to indemnify León under the CGL Coverage Part in the Colorado Action.

**COUNT SEVEN**
**(Declaratory Judgment – No Duty to Defend León Under the Media Production Coverage Part)**

93. BNIC repeats and re-alleges the allegations of paragraphs 1 through 92 as if fully set forth herein.

94. BNIC seeks a declaration that, pursuant to the terms, provisions, definitions, conditions, and exclusions of the Media Production Coverage Part in the BNIC Policies, it does not have any duty to defend León in the Colorado Action or any obligation to pay any defense costs incurred by León in connection therewith.

95. An actual, justiciable and ripe controversy exists between BNIC and León concerning BNIC's duty to defend León, if any, in Colorado Action under the Media Production Coverage Part of the BNIC Policies.

96. BNIC is entitled to a declaratory judgment that it has no duty to defend León under the Media Production Coverage Part in the Colorado Action.

**COUNT EIGHT**
**(Declaratory Judgment – No Duty to Indemnify León Under the Media Production Coverage Part)**

97. BNIC repeats and re-alleges the allegations of paragraphs 1 through 96 as if fully set forth herein.

98. BNIC seeks a declaration that, pursuant to the terms, provisions, definitions, conditions, and exclusions of the Media Production Coverage Part in the BNIC Policies, it does not have any duty to indemnify León in the Colorado Action or any obligation to pay any settlement costs incurred by León in connection therewith.

99. An actual, justiciable and ripe controversy exists between BNIC and León concerning BNIC's duty to indemnify León, if any, in Colorado Action under the Media Production Coverage Part of the BNIC Policies.

100. BNIC is entitled to a declaratory judgment that it has no duty to indemnify León under the Media Production Coverage Partin the Colorado Action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff BNIC, respectfully requests that this Court enter a judgment:

(i) declaring that BNIC has no duty to defend Watt Pictures in the New York Action under the CGL Coverage Part of the BNIC Policies;

(ii) declaring that BNIC has no duty to indemnify Watt Pictures in the New York Action under the CGL Coverage Part of the BNIC Policies;

(iii) declaring that BNIC has no duty to defend Watt Pictures in the New York Action under the Media Production Coverage Part of the BNIC Policies;

(iv) declaring that BNIC has no duty to indemnify Watt Pictures in the New York Action under the Media Production Coverage Part of the BNIC Policies;

(v) declaring whether, and to what extent, BNIC has a duty to defend León in the Colorado Action under the CGL Coverage Part of the BNIC Policies;

(vi) declaring whether, and to what extent, BNIC has a duty to indemnify León in the Colorado Action under the CGL Coverage Part of the BNIC Policies;

(vii) declaring that BNIC has no duty to defend León in the Colorado Action under the Media Production Coverage Part of the BNIC Policies;

(viii) declaring that BNIC has no duty to indemnify León in the Colorado Action under the Media Production Coverage Part of the BNIC Policies; and

(ix) for such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 21, 2026

**COUGHLIN MIDLIGE & GARLAND LLP**

By: */s/ Patrick K. Coughlin*

Patrick K. Coughlin, Esq.
Wall Street Plaza
88 Pine Street, 28th Floor
New York, New York 10005
(212) 483-0105
pcoughlin@cmg.law

*Attorneys for Plaintiff,*
*Berkley National Insurance Company*